RELATED DDJ

CLERK, U.S. DISTRICT COURT

MAR 15 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RS _____ DEPUTY

_FELIX DELGADILLO_
FULL NAME

_CORRECTIONAL TRAINING FACILITY ( CTF)_
COMMITTED NAME (if different)

_HIGHWAY 101 NORTH_
FULL ADDRESS INCLUDING NAME OF INSTITUTION

_SOLEDAD, CALIFORNIA, 93960_

_CDCR # BI 3731_
PRISON NUMBER (if applicable)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

_FELIX DELGADILLO_

PLAINTIFF,

v.

_LOS ANGELES COUNTY_
_LOS ANGELES DISTRICT ATTORNEY'S OFFICE_
_DOES 1 THRU 25._                      DEFENDANT(S).

CASE NUMBER **2:21-CV-02359-JFW-AS**

_To be supplied by the Clerk_

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** *(Check one)*

☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes   ☒ No

2. If your answer to "1." is yes, how many? _____ Ø _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:
Plaintiff _____ *NOT APPLICABLE* _____

_____

Defendants _____

_____

b. Court _____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it appealed?  Is it still pending?) _____

f. Issues raised: _____

_____

_____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☐ Yes    ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes    ☐ No

If your answer is no, explain why not *THE PLAINTIFF WAS A CITIZEN OF LOS ANGELES COUNTY AND IN THE CITY OF INGLEWOOD AND TORRANCE WHEN THESE CAUSES OF ACTION AROSE.*

3. Is the grievance procedure completed? ☐ Yes    ☐ No

If your answer is no, explain why not _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff *FELIX DELGADILLO*
(print plaintiff's name)

who presently resides at *CORRECTIONAL TRAINING FACILITY, HIGHWAY 101 NORTH, SOLEDAD, CALIF. 93960*
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

*INGLEWOOD CITY, INGLEWOOD AND TORRANCE SUPERIOR COURTHOUSE*
(institution/city where violation occurred)

on (date or dates) ___AUGUST 15, 2017___ , ___DECEMBER 1, 2017___ , ___MAR 29, 2018 & JAN 9, 2019___.
(Claim I)            (Claim II)            (Claim III)

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant ___COUNTY OF LOS ANGELES___ resides or works at
   (full name of first defendant)

   ___500 WEST TEMPLE ST. RM. 383 KENNETH HAHN HALL L.A. CA. 90012___
   (full address of first defendant)

   ___COUNTY BOARD OF SUPERVISORS. A MUNICIPALITY___
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☒ individual ☐ official capacity.

   Explain how this defendant was acting under color of law:

   ___COUNTY FAILED TO HAVE IN PLACE DISTRICT ATTORNEYS' WHO COMPLY WITH ARRESTEE'S CONSTITUTIONAL___

   ___RIGHTS BUT OFFICIAL(S) PROMULGATING PROSECUTORIAL INITIATED PERJURY AND BRADY VIOLATIONS___

2. Defendant ___LOS ANGELES COUNTY DISTRICT ATTORNEYS' OFFICE___ resides or works at
   (full name of first defendant)

   ___210 WEST TEMPLE STR. 18TH FLOOR. LOS ANGELES CALIF. 90012___
   (full address of first defendant)

   ___ASSIGNED AS LEGAL ADVISER FOR L.A. CO. A MUNICIPALITY___
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☒ individual ☐ official capacity.

   Explain how this defendant was acting under color of law:

   ___THE LOCAL DISTRICT ATTORNEYS' OFFICE ALLOWED D.A. QUINTEROS- PERELLO AS A GATE-___

   ___KEEPER ON MUNICIPAL POLICY THAT MAINTAINED ILLEGAL ACTS CAUSING CONSTITUTIONAL TORTS___

3. Defendant ___WALTER R. QUINTEROS - PERELLO___ resides or works at
   (full name of first defendant)

   ___210 WEST TEMPLE STR 18TH FLR. LOS ANGELES, CALIF. 90012___
   (full address of first defendant)

   ___DEPUTY DISTRICT ATTORNEY    INGLEWOOD - LOS ANGELES CO.___
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☒ individual ☒ official capacity.

   Explain how this defendant was acting under color of law:

   ___IN CAPACITY OF A STATE PROSECUTOR WENT OUT TO THE AREA OF ARREST AN PHOTOGRAPHED A FALSE___

   ___CRIME SCENE AS AN INVESTIGATOR WITH POLICE. THEN USE PERJURED POLICE TESTIMONY AS AUTHENTIC___

on (date or dates) _____ , _____ , _____ .
(Claim I)                        (Claim II)                        (Claim III)

**NOTE:**  You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant     _LUIS RODRIGUEZ_ _____ resides or works at
(full name of first defendant)

_ONE MANCHESTER BOULEVARD, INGLEWOOD, CALIFORNIA, 90301_
(full address of first defendant)

_INGLEWOOD POLICE DETECTIVE_
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_DET. ACTED DECEPTIVE. NEVER TESTIFIED AND KEPT REPORTS WITH FAVORABLE AND EXONERATING_

_EVIDENCE AND STATEMENTS BY CLAUDIA GUZMAN AND PLAINTIFF OUT OF COURT_

2.  Defendant     _JOSEPH LISARDI_ _____ resides or works at
(full name of first defendant)

_ONE MANCHESTER BOULEVARD INGLEWOOD, CALIFORNIA, 90301_
(full address of first defendant)

_INGLEWOOD POLICE OFFICER_
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_DEFENDANT LISARDI FRAUDULENTLY TESTIFIED FALSELY HIS TESTIMONY WAS STATE INITIATED_

_POLICE PERJURY TO ACCEDE TO PROSECUTIONS STAGED PHOTOGRAPHS AFTER THE ARREST._

3.  Defendant     _DANIEL LEE_ _____ resides or works at
(full name of first defendant)

_ONE MANCHESTER BOULEVARD, INGLEWOOD CALIF. 90301_
(full address of first defendant)

_INGLEWOOD POLICE OFFICER_
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_WENT BACK TO THE ARREST LOCATION WITH COUNTY PROSECUTOR QUINTEROS-PERELLO_

_WHO TOOK PHOTOGRAPHS FOR USE AT PLAINTIFF'S TRIAL. POLICE LEE THEN ATTEMPTED TO_

_CONCEAL WHILE TESTIFYING HE DID'NT KNOW WHO TOOK THE PHOTOGRAPHS HE TESTIFIED TO_

4. Defendant _____ resides or works at
                  (full name of first defendant)

              _____
              (full address of first defendant)

              _____
              (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

5. Defendant _____ resides or works at
                  (full name of first defendant)

              _____
              (full address of first defendant)

              _____
              (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

D. **CLAIMS***

**CLAIM I**

The following civil right has been violated:

THE FOURTH, FOURTEENTH AMENDMENT OF UNITED STATES CONSTITUTION AND DELIBERATE INDIFFERENCE.

42 U.S.C. §§ 1983, 1986 AND § 1988 (b)

CAL. PENAL CODE § 198.5 et.seq. ("FALSELY REPORTING CRIME"); PEN. CODE § 141 (a)(c) ("KNOWINGLY ALTERS - MANUFACTURES PHYSICAL MATTER WITH INTENT THE ACTION RESULTS IN A PERSON BEING CHARGED WITH A CRIME") AND PEN. CODE § 118 (a) ("PERJURY")

CAL. BANE ACT CIV. CODE § 52.1

28 U.S.C. § 1367 (a) ("SUPPLEMENT JURISDICTION OVER STATE LAW CLAIMS")

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

1. PLAINTIFF, FELIX DELGADILLO, IS AND WAS AT ALL TIMES MENTIONED HEREIN A CITIZEN OF THE STATE OF CALIFORNIA COUNTY OF LOS ANGELES, WHO WAS SEIZED AND ARRESTED BY INGLEWOOD POLICE, WITHOUT A WARRANT WHILE ON A SOCIAL DATE WITH MS. CLAUDIA GUZMAN AUGUST 15, 2017 WHILE IN THE CITY OF INGLEWOOD, CALIFORNIA.

2. IN THE HOURS LEADING UP TO THIS INCIDENT BOTH PLAINTIFF AND MS. GUZMAN WERE PATRONIZING THE "DIAMOND INN MOTEL" ON "IMPERIAL" BOULEVARD IN INGLEWOOD, CALIFORNIA WITHIN 1-MILE OF THEIR DETENTION AND ARREST. WHEN SEVERAL POLICE OFFICERS' APPEARED FROM A DISTANCE, AND TEN-FIFTEEN MINUTES THEREAFTER APPROACHED, SOME HOLDING HAND GUNS.

3. AT THE TIME WHEN THE PLAINTIFF AND MS. GUZMAN WAS ACCOSTED BY SEVERAL POLICE OFFICERS THEY WERE IN A RESIDENTIAL NEIGHBORHOOD AREA AND A SLIGHT DISTANCE AWAY WHERE WE WERE WATCHING THE INITIAL ARRIVAL OF THE POLICE STOP AND ILLUMINATE MS. GUZMAN'S WHITE TOYOTA PRIUS VEHICLE PLAINTIFF HAD DRIVEN NOW SITTING ON A FLAT TIRE (Exhibit a.) UNABLE WITH THE TOOLS AN SPARE

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

TIRE TO CHANGE THE FLAT THE PLAINTIFF AND MS. GUZMAN WHOM HAD COMSUMED SOME QUANTITIES OF ALCOHOL IN THE MOTEL ROOM DECIDED TO GET SOME FRESH AIR BY THEIR WALK UP THE RESIDENTIAL PATH THROUGH A TRAIL OFF THE ROADWAY, UNBEKNOWN TO PLAINTIFF AND MS. GUZMAN THE POLICE ADVANCING UP THE LONG WALK WAY PATH ALLEGEDLY WERE RESPONDING TO AN ALLEGED ANONYMOUS CALLER THAT MS. GUZMAN HAD BEEN PUT IN THE TRUNK OF THE VEHICLE, BY PLAINTIFF, BE IT A HATCHBACK.  THE UNSUBSTANTIATED USE WITHOUT PROPER INVESTIGATION OF AN ANONYMOUS CALLERS STATEMENTS AS A 911 CALL CAN VIOLATE AN ARRESTEE'S - PLAINTIFF'S FOURTH AMENDMENT RIGHT.

4.    AFTER PLAINTIFF'S ARREST THE NIGHT OF AUGUST 15, 2017 HE WAS LATER SUMMONED TO SPEAK WITH INGLEWOOD CITY POLICE DETECTIVE MR. LUIS RODRIGUEZ, PLAINTIFF BELIEVES HE DISCUSSED ALL PERTINENT FACTS ABOUT HE AND MS.GUZMAN'S OUTING WITH DETECTIVE RODRIGUEZ: THAT HE AND MS.GUZMAN ARE PARENTS OF A DAUGHTER AND, THAT, THE "DIAMOND INN MOTEL" PROPRIETOR ON "IMPERIAL BOULEVARD" IN INGLEWOOD COULD ESTABLISH WE WERE OCCUPANTS PRIOR TO OUR DETENTION AND ARREST. (Exhibit B.)

5.    DURING THE INTERVIEW INVESTIGATION WITH DETECTIVE RODRIGUEZ SAYING THAT I WAS SUSPECTED OF KIDNAP - I WAS UNDER THE IMPRESSION IT HAD SOMETHING TO DO WITH THE LICENSE PLATE HE POSSESSED THAT WAS ON MS. GUZMAN'S TOYOTA PRIUS: 7SXX589. (7 SAM X-RAY X-RAY 589.) HE BECAME CONCERNED OR FOCUSED ON HAD I ATTACHED OR KNEW WHO ATTACHED THE LICENSE PLATE TO THE VEHICLE.

6.    ONCE MS. GUZMAN TALKED WITH DETECTIVE RODRIGUEZ TWO WEEKS AFTER HER AND PLAINTIFF'S DETENTION AND ARREST. SHE TOLD POLICE DET. RODRIGUEZ THAT PLAINTIFF - DELGADILLO HAD NOT KIDNAPPED HER. SHE HAD BEEN TRYING TO HURT HERSELF, AND PLAINTIFF - DELGADILLO WAS GOING TO TAKE HER HOME. SHE TOLD DET. RODRIGUEZ THEN. THAT SHE HAD GOTTEN INTO THE TRUNK OF THE PRIUS. BUT PLAINTIFF - DELGADILLO HAD HIT HER. (3RT. 929-930:

1   See DEFENSE PHYSICAL EVID. ON DEC. 1. 2017 CT. PROCEEDINGS - MONTHS BEFORE

2   TRIAL.(R.T. 19:11-19; Exhibit B

3   7.   ONCE MS. GUZMAN HAD EXPRESSED TO POLICE DETECTIVE RODRIGUEZ

4   THE PLAINTIFF-DELGADILLO HAD NOT ABDUCTED OR KIDNAPPED HER - HOW THIS

5   FACT-INTENSIVE INFORMATION COULD BE KEPT WITHIN THE POLICE DEPARTMENT

6   RANKS OR FROM DEFENDANT, DEPUTY, DISTRICT ATTORNEY, WALTER QUINTEROS-

7   PERELLO, REPRESENTING THE LOS ANGELES DISTRICT ATTORNEY'S OFFICE IS BEYOND

8   BELIEF. DISAPPOINTING AND, FRIGHTENING. THE DISCLOSURE OF MS. GUZMAN'S

9   STATEMENTS TO DEFENDANT POLICE DETECTIVE LUIS RODRIGUEZ SHOULD HAVE

10  CEASED PROSECUTION OF SUPERIOR COURT CASE NO. YA096701. (Exhibit A.)

11  8.   DURING PLAINTIFF-APPELLANT'S APPEAL FROM THE CRIMINAL KIDNAP

12  APPEAL CASE SUPERIOR CASE YA096701. PLAINTIFF'S ATTORNEY ASKED FOR A

13  COPY OF THE TRANSCRIPT OF MS. GUZMAN'S POLICE INTERVIEW WITH DEFENDANT.

14  POLICE DET. RODRIGUEZ, HE REFUSED TO PROVIDE A COPY. (Exhibit E.)

15  9.   SO APPARENTLY, BEFORE A CRIMINAL TRIAL PROSECUTION ACTUALLY BEGIN

16  RECORDS OR EVIDENCE SHOWED BOTH DEFENDANT RODRIGUEZ, AND DEFENDANT

17  DEPUTY. DISTRICT ATTORNEY, QUINTEROS-PERELLO HAD KNOWLEDGE

18  BOTH DOCUMENTARY AND TANGIBLE EVIDENCE MATERIALLY FAVORABLE TO

19  PLAINTIFF EXISTED YET ACTED WITH DELIBERATE INDIFFERENCE AN RECKLESS

20  DISREGARD FOR PLAINTIFF'S DUE PROCESS RIGHTS AND ENTITLEMENT TO

21  BENEFIT FROM THE MATERIAL IN FACE OF ALLEGED CRIMINAL PROCEEDINGS.

22  (Exhibit C & E.)

23  10.   AT ALL TIME RELEVANT TO THIS COMPLAINT, DEFENDANT, DEPUTY, DISTRICT

24  ATTORNEY QUINTEROS-PERELLO CONTINUED TO STAGE PROSECUTING THE KIDNAP

25  CHARGE WITHOUT EVIDENCE, A WARRANT AND OR PROBABLE CAUSE, INSPITE OF

26  EXONERATING EVIDENCE FROM MS. GUZMAN'S STATEMENTS IN DEFENDANT RODRIGUEZ

27  POSSESSION THAT "SHE WAS NOT KIDNAPPED" AND AFTER GAINING PERSONAL

28  KNOWLEDGE OF MS. GUZMAN DEMONSTRATING HERSELF GETTING IN THE BACK

OF THE TOYOTA PRIUS HATCHBACK PRIOR TO DECEMBER 1.2017. (R.T. 19:11-19; Exhibit B.) AND DEFENDANT, DEPUTY, DISTRICT ATTORNEY, QUINTEROS-PERELLO'S DUBIOUS PROSECUTION AT THAT POINT WAS DELIBERATE INDIFFERENCE OR RECKLESS DISREGARD FOR RIGHTS HELD BY PLAINTIFF - THAT AN INSTIGATED PROSECUTION, WITHOUT LEGAL PROCEEDINGS ON ESTABLISHED PROBABLE CAUSE. AND, ARREST WITHOUT A WARRANT. OR BEING BOUND OVER BY A MAGISTRATE FOR LAWFUL PROBABLE CAUSE WAS UNAUTHORIZED ON THE CHARGES.

11.    BOTH THE DEFENDANT, DISTRICT ATTORNEY'S OFFICE, AND DEFENDANT, LOS ANGELES COUNTY HAD IN PLACE AN OFFICIAL POLICY OR CUSTOM BASED ON AN ATTORNEY'S HIRED STATUS SUCH PERSON AS DEFENDANT, DEPUTY, DISTRICT ATTORNEY, QUINTEROS-PERELLO COULD STALL JUDICIAL PROCESSES AND METHODS TO BRING ABOUT HIS INDIVIDUAL DESIRED END, AND AVOID STATUTORY AND CONSTITUTIONAL PROTECTIONS AS IN THIS CASE, OF INDIVIDUALS. PLAINTIFF INCLUDED, BEING TARGETED FOR BASELESS OR UNREASONABLE PROSECUTION, UNTIL THEY DECIDE TO DISMISS THE COMPLAINT.

12.    WITH THE OFFICIALLY RETAINED EVIDENCE IN POLICE DETECTIVE, DEFENDANT, RODRIGUEZ' AND DEFENDANT, DEPUTY, DISTRICT ATTORNEY, QUINTEROS-PERELLO'S POSSESSION. (EXHIBITS B & E.), THE DEFENDANT, LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE, MUNICIPALITY. ALLOWED THE INJURY TO PLAINTIFF THROUGH THEIR ADOPTED OFFICIAL POLICY. MAINTAINED AS A PRACTICE OR CUSTOM THAT ENABLED, DEFENDANT, DEPUTY, DISTRICT ATTORNEY, QUINTEROS-PERELLO'S TO ACT AS "FINAL POLICYMAKER" THAT WAS THE MOVING FORCE WHICH DEPRIVED PLAINTIFF THE RIGHT TO BE FREE FROM THE COUNTY SEIZURE AND PRETRIAL DETENTION BUT UPON PROBABLE CAUSE.

13.    FURTHERMORE. SINCE PLAINTIFF NEED ONLY ESTABLISH THAT HIS SEIZURE WAS OBJECTIVELY UNREASONABLE, REQUIREMENTS UNDER THE FOURTH AMENDMENT PROVIDES PROTECTION AGAINST PRETRIAL DETENTION(S) WITHOUT PROBABLE CAUSE TO BE FREE FROM MALICIOUS PROSECUTION, AND THAT, DEFENDANT,

1  LOS ANGELES COUNTY, HAS BY ACQUIESCENCE OR BY TACIT AUTHORITY OR POLICY

2  IMPLEMENTATION ALLOWED DEFENDANT, DEPUTY, DISTRICT ATTORNEY, QUINTEROS -

3  PERELLO TO CONTINUE PROSECUTION IN THE FACE OF PLAINTIFF'S EXONERATING

4  EVIDENCE (EXHIBITS B & E) SUCH THAT, DEFENDANT, DEPUTY, DISTRICT

5  ATTORNEY, QUINTEROS - PERELLO ACTED WITH MALICE THROUGH MALICIOUS

6  PROSECUTION DURING HIS CONTINUED PROSECUTION, A COURSE OF ACTION THAT IS OF A

7  DECISIONMAKER REPRESENTING CONDUCT OF THE DEFENDANT, DISTRICT ATTORNEY'S

8  OFFICE MUNICIPALITY.

9      14.    ON OR AROUND OCTOBER 2017, DEFENDANT, DEPUTY, DISTRICT ATTORNEY

10  QUINTEROS - PERELLO WHO ASSIGNED IN A LEGAL CAPACITY TO TRY A STATE CASE,

11  WENT OUT INTO THE FIELD WITH INGLEWOOD POLICE OFFICER, DEFENDANT, DANIEL

12  LEE TO BEGIN RECASTING PHOTOGRAPHS OF MS. GUZMAN AND PLAINTIFF'S DETENTION

13  AND ARREST LOCATION INTO A CRIME SCENE, AN, THE NEW 13 - PHOTOGRAPHS FAILED TO

14  DEPICT THE RESIDENTIAL PATH TRAIL AND MADE IT CONVENIENT FOR INGLEWOOD

15  POLICE DEFENDANT, JOSEPH LISARDI, WHO NEVER NOTICED THE CHANGE TO THE

16  NEW PHOTOS IN TESTIFYING TO OBSERVING PLAINTIFF ALLEGEDLY ASSAULT MS GUZMAN

17  AND DRAG HER WHEN HE ARRIVED.   ALTHOUGH DEFENDANT, DEPUTY DISTRICT ATTORNEY

18  QUINTEROS- PERELLO IS PRECLUDED BASED ON LOST OF ABSOLUTE IMMUNITY WITH

19  RESPECT TO ACTIONS TAKEN OUTSIDE OF HIS ROLE AS A STATE ADVOCATE BY: i. GIVING

20  ADVICE TO POLICE DURING CRIMINAL INVESTIGATIONS, AND, ii. PERFORMING

21  INVESTIGATIVE FUNCTIONS OF A POLICE OFFICER,  DEFENDANT, DEPUTY, DISTRICT

22  ATTORNEY'S, QUINTEROS - PERELLO'S  BREACHING OF THIS ENDORSED LAW, BY

23  STAGING A CRIME SCENE THROUGH POLICE PERJURED  TESTIMONY TO COMPEN-

24  SATE FOR LACK OF FACTS JUSTIFYING PROBABLE CAUSE WAS A POLICY OR CUSTOM

25  OF DELIBERATE INDIFFERENCE TO PLAINTIFF'S CONSTITUTIONAL RIGHTS.

26      15.    THE DEFENDANT, LOS ANGELES DISTRICT ATTORNEY'S OFFICE WHO EMPLOYED

27  DEFENDANT, DEPUTY, DISTRICT ATTORNEY, QUINTEROS - PERELLO, HAD A POLICY OR

28  CUSTOM TACITLY AUTHORIZED WHICH ALLOWED  DEFENDANT, QUINTEROS - PERELLO,

1    DECISIONS TO ADOPT A PARTICULAR COURSE OF ACTION. AS AN AUTHORIZED

2    DECISION MAKER, WHO INSTRUCTED A CITY POLICE DEFENDANT, LEE. TO GO

3    WITH.. OR MEET HIM.. AT AN ARREST LOCATION WHERE HE WILL PHOTOGRAPH

4    THE AREA AND THE POLICE OFFICER THEREAFTER WILL TESTIFY TO SUCH PHOTO-

5    GRAPHS IN THE MODE AS A CRIME AREA IN A JUDICIAL FORUM. WHEREAS,. ITS

6    HELD THAT SAID PROSECUTORIAL DECISION (S) OF AN OFFICIAL AUTHORIZED TO

7    ESTABLISH COUNTY POLICY. (R.T. 16: 4-17 : Exh. B.) WITHIN THE MEANING

8    ENDORSED IN PEMBAUR v. CITY OF CINCINNATI (1986) 475 U.S. 469. 481; e.g.,

9    LAREZ v. CITY OF LOS ANGELES. 946 F2d 630, 646 (9TH CIR. 1991)

10   16.   DEFENDANT, JOSEPH LISARDI, WHO WAS PART OF THE INITIAL CREW THAT

11   DETAINED AND ARRESTED PLAINTIFF, WITH KNOWLEDGE THERE WAS NO MEANINGFUL

12   INVESTIGATION FULLY COMPLETED OR ENTAILING, THE FACTUAL CIRCUMSTANCES

13   MS. GUZMAN AND PLAINTIFF HAD JUST LEFT THE " DIAMOND INN MOTEL" ON

14   IMPERIAL BOULEVARD WITHIN A 30-MINUTE TIME FRAME. AS A WITNESS FOR

15   DEFENDANT, DEPUTY, DISTRICT ATTORNEY, QUINTEROS- PERELLO. THE TESTIMONY BY

16   DEFENDANT. LISARDI. WAS FALSE BECAUSE DEFENDANT LISARDI. COULD NOT HAVE

17   SEEN PLAINTIFF HIT OR DRAG MS. GUZMAN IN AN ASSAULTIVE MANNER. BECAUSE BOTH

18   MS. GUZMAN AND PLAINTIFF HAD BEEN WATCHING THEIR TO INCLUDE, DEFENDANT

19   LISARDI. INITIAL ARRIVAL TO THE PARKED TOYOTA PRIUS- 20 YARDS AWAY; (2) THE

20   PROSECUTION LEFT OUT THE RESIDENTIAL PATH TRIAL, THAT MS. GUZMAN AND PLAINTIFF

21   WENT UP IN 13- PHOTOGRAPHS RECASTING. AND THUS, THE DISTANCE. DEFENDANT

22   LISARDI WOULD HAVE TO TRAVEL TO REACH THEM.. (3) THE FALSE TESTIMONY WAS

23   MATERIAL MEANT TO CONSTITUTE AN INTENDED KIDNAP CHARGE — AN AFTER THE

24   FACT ATTEMPT BY DEFENDANT. QUINTEROS-PERELLO TO SHOW A KIDNAP SINCE HE

25   KNEW AN ORIGINAL INVESTIGATION BY DEFENDANTS LISARDI AND DANIEL LEE

26   NEVER ENSUED. ( R.T. 79:19-20) MS. GUZMAN. TESTIFIED PLAINTIFF WAS STANDING

27   NEAR HER WHEN THREE POLICE APPROACHED HER FROM THE SIDE (R.T. 148:2-7) See

28   DECLARATION BY PLAINTIFF FELIX DELGADILLO. THE DEFENDANT. DEPUTY. DISTRICT

1  ATTORNEY. QUINTEROS-PERELLO WAS BY LEGAL OBLIGATION DUTY BOUND TO

2  CORRECT THE FALSE OBSERVATION OF AN ASSAULT AND DRAGGING OF MS. GUZMAN.

3  17.  DEFENDANT, DANIEL LEE, ON OR ABOUT OCTOBER 2017, WENT BACK TO

4  THE DETENTION AND ARREST LOCATION WITH DEFENDANT, DEPUTY, DISTRICT

5  ATTORNEY, QUINTEROS-PERELLO, WHERE 13-PHOTOGRAPHS STAGED A CRIME

6  SCENE FROM WHERE PLAINTIFF AND MS. GUZMAN WAS ACCOSTED AUGUST 15, 2017.

7  THE DEFENDANT SOUGHT BY TESTIMONY TO DISGUISE AND MISREPRESENT HE

8  WAS PRESENT WHEN PHOTOGRAPHS WERE TAKEN BY DEFENDANT, DEPUTY,

9  DISTRICT ATTORNEY, QUINTEROS-PERELLO, OR, 2) THAT MS. GUZMAN PRIOR TO

10  THE NIGHT IN QUESTION OF AUGUST 15, 2017 HAD A MENTAL ISSUE GOING ON

11  THAT FORTHWITH BROUGHT HER UNDER THE JURISDICTIONAL HAND OF D.C.F.S.,

12  AND HE BECAME AN ESCORTING POLICE OFFICER THE NIGHT OF AUGUST 15, 2017 AND

13  AT A LATER COURT APPEARANCE, ALL OF WHICH, WAS AMPLE EVIDENCE SUPPORTING

14  PLAINTIFF WAS INNOCENT AND NO PROBABLE CAUSE FOR HIS DEFENTION ARREST

15  AND CONVICTION.

16        E. STATE EXHAUSTION OF LEGAL CLAIM

17  18.  ON MAY 18, 2020 THE PLAINTIFF, FELIX DELGADILLO, FORWARDED A

18  "CLAIMS FOR DAMAGES TO PERSON OR PROPERTY" TO THE BOARD OF SUPERVISORS,

19  ATTENTION: CLAIMS, 500 WEST TEMPLE STREET. ROOM 383, KENNETH HAHN HALL

20  OF ADMINISTRATION LOS ANGELES, CALIFORNIA 90012. THEREAFTER ON MAY 20, 2020

21  THE CLAIMS PRESENTED BY PLAINTIFF WAS REJECTED INVOLVING FACTS RELATING

22  TO THIS COMPLAINT AS COUNTY CLAIM NO. 20-1160541 * 001.

23        F. LEGAL CLAIMS

24  19.  PLAINTIFF REALLEGES AND INCORPORATES BY REFERENCE PARAGRAPHS

25  1 THROUGH 18.

26  20.  DEFENDANTS, JOSEPH LISARDI, AND DANIEL LEE, WITHOUT LEGAL

27  JUSTIFICATION AND ON FLAWED POLICE OFFICER KNOWLEDGE ARRESTED PLAINTIFF

28  WITHOUT A WARRANT AND PROBABLE CAUSE AND DISREGARDED THE ALLEGED VICTIM

1  HAD SERIOUS MENTAL ISSUES INSUFFICIENT AS PROBABLE CAUSE FOR PLAINTIFF'S

2  ALLEGED COMMITTED OFFENSE - LATER COVERED-UP BY THEM AT JUDICIAL PROCEEDINGS.

3  DEFENDANTS ACTS AND OMISSIONS VIOLATED PLAINTIFF'S RIGHTS UNDER THE FOURTH

4  AMENDMENT TO THE UNITED STATES CONSTITUTION; 42 U.S.C. § 1983; 42 U.S.C. § 1986;

5  PLAINTIFF'S STATE LAW RIGHTS TO BE FREE FROM ILLEGAL SEARCHES AND SEIZURES

6  UNDER THE CALIFORNIA BANE ACT, CIV. CODE § 52.1, AND DEFENDANTS ACT WAS MALICE

7  AND OPPRESSION; AND, CAUSED PLAINTIFF MENTAL ANGUISH AND SUFFERING;

8  IMPAIRMENT OF REPUTATION AND PERSONAL HUMILIATION.

9  21.   DEFENDANTS', DEPUTY, DISTRICT ATTORNEY, QUINTEROS-PEREZ, AND INGLEWOOD

10  POLICE DETECTIVE DEFENDANT, LUIS RODRIGUEZ. WHOM FAILED AND REFUSED TO ALLOW

11  ALLEGED VICTIM MS. GUZMAN'S INTERVIEWING STATEMENTS WITH DETECTIVE DEFENDANT

12  RODRIGUEZ INTO COURT PROCEEDINGS THAT ESTABLISHED PLAINTIFF HAD NOT KIDNAPPED

13  HER WITH THE AIM TO SUPPRESS HER EXCULPATORY STATEMENTS AS EVIDENCE BY

14  USING THAT PRACTICE OR CUSTOM IN AN AFFIRMATIVE ACT, THAT DEPRIVES AN

15  ACCUSED, PLAINTIFF INCLUDED, OF HIS STATUTORY AND CONSTITUTIONAL RIGHTS

16  TO PRESENT FAVORABLE DEFENSE EVIDENCE AT OR PRIOR TO THE START OF

17  CRIMINAL PROCEEDINGS AMOUNTED TO DELIBERATE INDIFFERENCE.  DEFENDANTS'

18  ACTIONS VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS, BEING THE MOVING FORCE

19  THAT DEPRIVED PLAINTIFF OF HIS RIGHTS UNDER 42 U.S.C. § 1983; FOURTH AND

20  FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION; CAL. CIV. CODE §

21  52.1, AND WAS MALICIOUS AND OPPRESSIVE, AND CAUSED MENTAL ANGUISH AND

22  SUFFERING IMPAIRMENT OF REPUTATION AND PERSONAL HUMILIATION.

23  22.   DEFENDANT, DISTRICT ATTORNEY'S OFFICE, RESPONSIBLE FOR THE PROSECUTION

24  OR DISMISSAL OF CRIMINAL CHARGES, FOR LOS ANGELES CITIZENS, IN THE ROLE AND

25  POSITION AS LEGAL ADVISOR AND STATE PROSECUTORS FOR DEFENDANT,

26  LOS ANGELES COUNTY, THROUGH EXECUTION OF THE GOVERNMENT'S POLICY OR CUSTOM

27  ALLOWED, DEFENDANT, DEPUTY DISTRICT ATTORNEY QUINTEROS-PEREZ'S EDICTS

28  AND ACTS REPRESENTING OFFICIAL POLICY FOR DEFENDANTS LOS ANGELES COUNTY.

1  AND, DEFENDANT DISTRICT ATTORNEY'S OFFICE  INFLICT CONSTITUTIONAL INJURY

2  TO PLAINTIFF  IN THE CAPACITY OF A STATE PROSECUTING ADVOCATE IN HIS

3  CONDUCT PRIOR TO, AND DURING LATER INITIATED COURT PROCEEDINGS BY

4  PERSONALLY HAVING KNOWLEDGE PLAINTIFF WAS ACCOSTED, DETAINED AND ARRESTED

5  WITHOUT PROBABLE CAUSE AUGUST 15, 2017. AND FAILING TO ACKNOWLEDGE THE

6  FALSE ARREST BY CONCEALMENT OF PHYSICAL AND DOCUMENTARY EXONERATING

7  EVIDENCE. ALL OF WHICH, WAS THE MOVING FORCE FOR THE DELIBERATE

8  INDIFFERENCE OF PLAINTIFF'S CONSTITUTIONAL RIGHTS THAT WAS IGNORED.

9  DEFENDANTS' OFFICIAL POLICY VIOLATED PLAINTIFF'S FOURTH AND FOURTH AND

10  FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION. WITHIN

11  THE MEANING OF MONELL v DEPARTMENT OF SOCIAL SERVICES (1978) 436 U.S. 658, 690-91.

12    DEFENDANTS ACTS AND OMISSIONS WAS MALICE AND OPPRESSION, AND CAUSED

13  IMPAIRMENT OF REPUTATION. PERSONAL HUMILIATION, AND MENTAL ANGUISH AND SUFFERING.

14    23.  DEFENDANT, DEPUTY DISTRICT ATTORNEY, QUINTEROS-PERELLO, BY OFFICIAL

15  MUNICIPAL POLICY STATEMENT AND SUBSEQUENT CONDUCT FOR DEFENDANT, LOS ANGELES

16  COUNTY, AND, DEFENDANT, DISTRICT ATTORNEY'S OFFICE, AS A COUNTY PROSECUTING

17  OFFICIAL THAT DIRECTED POLICE DEFENDANT. LEE, UNDER MUNICIPAL POLICY

18  FOLLOWING HIS LEAD OF DEFENDANT, DEPUTY, DISTRICT ATTORNEY, QUINTEROS-PERELLO'S

19  FINAL AUTHORITY TO MEET OR ACCOMPANY DEFENDANT, LEE NEAR 3625 WEST 120TH

20  STREET TO PHOTOGRAPH CERTAIN AREA'S THAT OMITTED THE RESIDENTIAL PATH

21  TRAIL FROM PLAINTIFF'S ARREST LOCATION. SO THAT POLICE DEFENDANTS LEE, AND

22  LISARDI, WOULD TESTIFY TO THE RECASTED PHOTOGRAPHIC LOCATIONS WAS ACTING

23  AS A POLICYMAKER FOR DEFENDANT. LOS ANGELES COUNTY WHO CONCURRED IN THE

24  DECISION OF DEFENDANT, QUINTEROS-PERELLO'S ACTIONS. BY THE ACTS FAIRLY SAID TO

25  REPRESENT AN AUTHORIZED POLICYMAKER IN IMPLEMENTING A INVESTIGATING POLICE

26  FUNCTION FOR HIMSELF TO INTRODUCE POLICE PERJURED TESTIMONY AS A MEANS TO

27  OVERRIDE THE ARREST WITHOUT PROBABLE CAUSE AND CONCEALMENT OF EXCULPATORY

28  IN DETECTIVE, DEFENDANT RODRIGUEZ' POSSESSION. AND PERSONALLY ACKNOWLEDGED

1    THROUGH DEFENSE COUNSEL DECEMBER 1, 2017 DURING THE JUDGE BRANDLIN

2    PROCEEDINGS (R.T. 19:11-19. Exhibit B.) AND DEFENDANT, QUINTEROS-PIRELLO ACTS

3    WAS DELIBERATELY INDIFFERENT AND ENCOURAGED ILLEGAL CONDUCT BY ITS POLICE

4    OFFICERS VIOLATING PLAINTIFF'S RIGHTS STATED ABOVE, WITHIN THE MEANING OF

5    PEMBAUR v. CITY OF CINCINNATI; BUCKLEY v FITZSIMMONS (1993) 509 U.S. 259, 273-76;

6    42 U.S.C.§ 1983, FOURTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES

7    CONSTITUTION; CAL.CIV. CODE § 52.1*, AND CAUSED IMPAIRMENT OF REPUTATION,

8    PERSONAL HUMILIATION, MENTAL ANGUISH AND SUFFERING.

9    //

10    //

11    //

DECLARATION OF FELIX DELGADILLO

I, FELIX DELGADILLO, DECLARE AND STATES AS FOLLOWS:

THAT, IF CALLED TO GIVE TESTIMONY OR STATEMENTS DURING A DEPOSITION I WOULD TESTIFY COMPETENTLY AS FOLLOWS:

1.    THAT WHEN INGLEWOOD POLICE OFFICER, JOSEPH LISARDI, ARRIVED AT THE WHITE TOYOTA PRIUS, AND ILLUMINATED THEIR VEHICLE SPOTLIGHTS AN FORWARD FLOOD LIGHTS AND WAITED FOR AN ADDITIONAL UNIT TO ARRIVE TO CONDUCT A HIGH-RISK STOP. TO CALL THE OCCUPANTS OUT OF THE (R.T. 13:5-18: Exh. D.) MS. GUZMAN AND I, WATCH THESE POLICE OFFICERS, LISARDI INCLUDED. YELL AT THE PARKED TOYOTA VEHICLE ON A FLAT, FROM THE DISTANCE OF 30-90 YARDS AWAY. (R.T. 197: 21-25 Exh. D.) THAT MS. GUZMAN ADMITTED THROUGH TESTIMONY - THE NEXTS TIME THESE POLICE WERE SEEN, WAS APPROACHING THEM AS PLAINTIFF-DECLARANT WAS SAYING SOMETHING TO HER FIVE POLICE OFFICERS WALKED BEHIND HER TOWARD HER RIGHT SIDE AND THEN THREE FROM HER LEFT SIDE. (R.T. 178: 2-7. Exh. D; PLAINTIFF-DECLARANT TESTIFIED TO THE SAME OCCURRENCE (R.T. 105:2-13: 106:9-5 Exh D.)

2.    BECAUSE DISTRICT ATTORNEY, QUINTEROS-PERELLO ALLOWED POLICE WITNESS MR. LISARDI TO TESTIFY - THAT WHEN HE ARRIVED HE SAW DEFENDANT-PLAINTIFF "PUSH MS. GUZMAN DOWN TO THE GROUND; BEGIN TO HIT HER; GRABBED HER LEGS TO DRAG HER OUT OF VIEW (R.T. 17:7-9. Exh. D.) THAT TESTIMONY WAS DAMAGING AND PREJUDICIAL. THE PROSECUTOR, QUINTEROS-PERELLO FAILED TO CORRECT POLICE LISARDI'S FALSE TESTIMONY. FALSE EVIDENCE CAN NOT BE USED TO OBTAIN A CONVICTION.

3.    IT WAS ESTABLISHED THROUGH BOTH POLICE WITNESS'S, THAT NO INVESTIGATION WAS TAKEN ALTHOUGH THE TRAIL-WAY MS. GUZMAN AND I WALK THROUGH TO THE OTHER SIDE CONTAINED THREE MEN STANDING NEAR BY

WHEN INGLEWOOD POLICE OFFICER LEE WAS ASKED "HAD HE CHECKED TO SEE WHERE MS. GUZMAN AND PLAINTIFF-DELGADILLO WERE COMING FROM DISTRICT ATTORNEY, DEFENDANT, QUINTEROS-PERELLO OBJECTED TO CONCEAL THAT LINE OF QUESTIONS (R.T. 79:19-22.). PLAINTIFF BELIEVED BRADY MATERIAL." REQUIRES THE PROSECUTION "TO LEARN OF MATERIAL EXCULPATORY AND IMPEACHING EVIDENCE IN THE POSSESSION OF OTHER AGENCIES."

4.   THAT MS. GUZMAN HAD IN HER POSSESSION A PIECE OF PAPER IN FRONT OF HER INDICATING OF WHEN SHE APPEARED TO INGLEWOOD OFFICIALS AND OTHERS TO SAY TO THEM SHE WAS NOT KIDNAPPED WHEN THE COURT JUDGE TOLD HER TO PUT IT AWAY.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT. EXECUTED THIS OCTOBER 28, 2020 AT CALIFORNIA CITY, CALIFORNIA.

FELIX DELGADILLO, DECLARANT

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTERS JUDGMENTS:

53. GRANTING PLAINTIFF A DECLARATORY JUDGMENT EACH DEFENDANTS ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED PLAINTIFF'S UNITED STATES CONSTITUTIONAL RIGHT UNDER THE FOURTH AND FOURTEENTH AMENDMENT;

54. COMPENSATORY DAMAGES IN THE AMOUNT OF SIX-MILLION DOLLARS AGAINST EACH DEFENDANT JOINTLY AND SEVERALLY;

55. PUNITIVE DAMAGES IN THE AMOUNT OF 1-MILLION DOLLARS AGAINST EACH DEFENDANT TO PLAINTIFF;

56. PLAINTIFF REQUEST A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY;

57. PLAINTIFF SEEKS RECOVERY OF COSTS IN THIS SUIT AND PURSUANT TO 42 U.S.C. § 1.988 (b), AND;

58. ANY ADDITIONAL RELIEF THIS COURT DEEMS, JUST, PROPER AND EQUITABLE.

DATED: OCTOBER 28, 2020.                    RESPECTFULLY SUBMITTED

FELIX DELGADILLO, PLAINTIFF

VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS FACTUALLY ALLEGED THEREIN ARE TRUE EXCEPT AS TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AND AS TO THOSE MATTERS I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT CALIFORNIA CITY, CALIFORNIA ON ~~OCTOBER~~ MAR. 11. 2021 28, 2020.

FELIX DELGADILLO, DECLARANT

MARCH 11, 2021
~~OCTOBER 28, 2020~~
_____          _____
(Date)                            (Signature of Plaintiff)





# EXHIBIT – B

*D1*

| | |
|---|---|
| 1 | CASE NUMBER: | YA096701-01 |
| 2 | CASE NAME: | PEOPLE VS. DELGADILLO |
| 3 | TORRANCE, CALIFORNIA | FRIDAY, DECEMBER 1, 2017 |
| 4 | DEPT. SOUTHWEST "F" | HON. JAMES R. BRANDLIN, JUDGE |
| 5 | REPORTER: | JANET N. PESUSICH, CSR NO. 11729 |
| 6 | TIME: | P.M. SESSION |

```
 7
 8    APPEARANCES:
 9              DEFENDANT FELIX DELGADILLO, PRESENT
10              WITH COUNSEL, ERICKA WILEY, DEPUTY
11              PUBLIC DEFENDER; WALTER QUINTEROS,
12              DEPUTY DISTRICT ATTORNEY, REPRESENTING
13              THE PEOPLE OF THE STATE OF CALIFORNIA.
14
15                   (THE FOLLOWING PROCEEDINGS WERE
16                   HELD IN OPEN COURT OUTSIDE THE
17                   PRESENCE OF THE PROSPECTIVE
18                   JURORS:)
19
20              THE COURT:  WE'RE BACK ON THE RECORD.
21                   THE COURT IS CALLING THE FELIX DELGADILLO
22    MATTER.
23                   IS MR. DELGADILLO PRESENT?
24              MS. WILEY:  HE IS, YOUR HONOR.
25              THE COURT:  MAY I HAVE THE APPEARANCES OF
26    COUNSEL, PLEASE?
27              MS. WILEY:  ERICKA WILEY, DEPUTY PUBLIC DEFENDER,
28    FOR MR. DELGADILLO WHO IS PRESENT.
```

D16

```
 1    I DON'T KNOW WHAT IT IS.  I HAVEN'T SEEN IT.  I WOULD
 2    OBJECT TO ITS ADMISSION ON THE BASIS OF LATE DISCOVERY.  I
 3    DON'T EVEN KNOW WHAT IT'S REFERRING TO AT THIS POINT.
 4            THE COURT:  WELL, I'M ORDERING THE PROSECUTION TO
 5    IMMEDIATELY DISCLOSE THE EXHIBITS THAT ARE LISTED AS,
 6    QUOTE, "POTENTIAL EVIDENCE," FOR COUNSEL'S REVIEW.
 7            MS. WILEY:  I WAS ADVISED BY COUNSEL VERBALLY
 8    THAT HE WENT OUT TO THE SCENE TODAY AND TOOK PHOTOGRAPHS
 9    WHICH HE PLANS TO PUT IN EVIDENCE.  OBVIOUSLY I HAVEN'T
10    SEEN THOSE.  I WOULD OBJECT BASED UPON LATE DISCOVERY TO
11    THOSE.
12            MR. QUINTEROS:  THESE ARE PHOTOGRAPHS, YOUR
13    HONOR, THAT WERE EMAILED TO DEFENSE COUNSEL I THINK ABOUT
14    HOUR OR SO AGO NOW.  THEY ARE PICTURES -- I WENT TO THE
15    SCENE LAST NIGHT AND TOOK THEM.  AND GIVEN THE MORNING IS
16    THE EARLIEST I COULD DOWNLOAD THEM AND EMAIL THEM TO
17    COUNSEL --
18            THE COURT:  OKAY.  I'D LIKE TO SEE THEM.  BUT MY
19    TENTATIVE IS TO OVERRULE THE OBJECTION.  IT CERTAINLY WOULD
20    HAVE BEEN NICE TO HAVE IT 30 DAYS PRIOR TO TRIAL, BUT
21    UNLESS YOU NEED A CONTINUANCE BECAUSE YOU'RE OTHERWISE NOT
22    READY BECAUSE OF THIS NEW EVIDENCE, I DON'T THINK IT'S
23    APPROPRIATE TO EXCLUDE RELEVANT AND PROBATIVE EVIDENCE IF
24    IT DOESN'T PUT YOU IN A TACTICAL DISADVANTAGE.
25                 SO IF THAT AFTER SEEING THE PHOTOGRAPHS YOU
26    NEED A CONTINUANCE BECAUSE YOU DON'T BELIEVE IT ACCURATELY
27    DEPICTS THE ALLEGED SCENE OF THE CRIME, THAT'S A DIFFERENT
28    STORY.  OTHERWISE, THE MERE FACT THAT IT'S BEING PRESENTED
```

D19

1    MR. QUINTEROS:  AT THIS POINT, I DO NOT SEE
2  ANYTHING ELSE.  I DON'T HAVE ANYTHING ELSE.  BUT THE ONLY
3  NEW EVIDENCE I HAVE IS PHOTOGRAPHS THAT I EMAILED COUNSEL.
4          AS TO -- THE ONLY THING I FORESEE IS IF BY
5  SOME CHANCE I'M ABLE TO GET THE VICTIM TO COME IN TO HAVE
6  HER TESTIFY -- AT THIS POINT I DON'T HAVE THE VICTIM.  BUT
7  IF THAT IS SOMETHING THAT COMES UP OVER THE WEEKEND OR
8  SOMETHING LIKE THAT, COUNSEL IS AWARE, HAS THE NAME AND
9  EVERYTHING OF THE POTENTIAL WITNESS THAT MIGHT POP UP.
10         THE COURT:  OKAY.
11         MS. WILEY:  ANOTHER ISSUE IS THAT I ADVISED
12  COUNSEL WHEN I WAS MADE AWARE THAT HE WAS THE D.A. ON THIS
13  CASE THAT THE DEFENSE HAS A VIDEO OF MS. GUZMAN ESSENTIALLY
14  MAKING A DEMONSTRATION OF HERSELF, GETTING INTO THE BACK OF
15  HER TOYOTA PRIUS.  I'VE ATTEMPTED TO TURN THIS VIDEO OVER
16  TO COUNSEL AS OF YESTERDAY, AND THE FILE WAS TOO LARGE TO
17  SEND.  BUT I WANTED TO MAKE THE COURT AWARE THAT COUNSEL
18  AND I HAVE DISCUSSED THAT VIDEO WHICH I PLAN TO PRESENT
19  INTO EVIDENCE.
20         THE COURT:  OKAY.
21         MR. QUINTEROS:  AND I WOULD OBJECT TO THAT VIDEO
22  BEING BROUGHT IN ON FOUNDATIONAL GROUNDS.  I HAVEN'T --
23  ALSO I HAVEN'T SEEN THE VIDEO.  COUNSEL SAID SHE ATTEMPTED
24  TO EMAIL IT TO ME.  I DON'T KNOW IF SHE CAN BURN IT ON A
25  DISC AND BRING IT TO ME NOW OR -- SO I CAN LOOK AT IT.  BUT
26  AT THIS POINT, I WOULD OBJECT TO ITS RELEVANCE AND
27  FOUNDATION IF IT WILL BE SUBMITTED IF THE VICTIM IS NOT
28  HERE TO TESTIFY AS TO THE VIDEO.

1   Q  DID YOU KNOCK ON ANY OTHER DOORS?

2   A  NO, SIR.

3   Q  SO YOU WERE AT LEAST MINIMALLY RESPONSIBLE

4 FOR FOLLOW-UP INVESTIGATION; IS THAT CORRECT?

5   MR. QUINTEROS:  OBJECTION; VAGUE, YOUR HONOR, AS TO

6 WHAT.

7   THE COURT:  YOU CAN CLARIFY ON REDIRECT.

8 OVERRULED.

9 BY MR. TURNER:

10   Q  WERE YOU AT LEAST MINIMALLY RESPONSIBLE FOR

11 FOLLOW-UP INVESTIGATION; IS THAT CORRECT?

12   A  YES, SIR.

13   Q  DID YOU LOOK FOR ANY CAMERAS ON THE STREET?

14   A  HONESTLY, I COULD NOT RECALL AT THIS TIME.

15   Q  DID YOU GO TO THE AREA OF PRAIRIE AND

16 IMPERIAL TO SEE IF THERE WERE ANY CAMERAS?

17   A  I HAD DRIVEN TO THE AREA OF IMPERIAL, BUT I

18 DID NOT, FROM WHAT I CAN RECALL, CHECK FOR CAMERAS.

19   Q  DID YOU DO ANY FOLLOW-UP INVESTIGATION TO SEE

20 WHERE THEY WERE COMING FROM?

21   MR. QUINTEROS:  OBJECTION; VAGUE.

22   THE COURT:  SUSTAINED.

23 BY MR. TURNER:

24   Q  YOU SAID INITIALLY MS. GUZMAN REFUSED TO GO

25 TO THE HOSPITAL; IS THAT CORRECT?

26   A  TO BE TRANSPORTED, YES, SIR.

27   Q  AND ISN'T IT TRUE THAT D.C.F.S. WAS CALLED?

28   MR. QUINTEROS:  OBJECTION, YOUR HONOR; RELEVANCE,

# EXHIBIT – C

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT, DIVISION ONE

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | Case No. B295324 |
| v. | ) | |
| | ) | |
| FELIX DELGADILLO, | ) | |
| | ) | |
| Defendant and Appellant. | ) | |

Los Angeles County Superior Court, Case No. YA096701
The Honorable Scott T. Millington, Judge

## APPELLANT'S REPLY BRIEF

CAROLYN D. PHILLIPS
Attorney at Law
State Bar No. 103045
P. O. Box 5622
Fresno, CA 93755-5622
TEL:    559-248-9833
FAX:    559-248-9820
cdp18@sbcglobal.net

Attorney for Appellant
FELIX DELGADILLO

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................4

I.   Anonymous Statements During 911 Call were ..................8
     Admitted in Violation of Appellant's Right to
     Confrontation Under the Sixth Amendment

     A.  The Admission of the Anonymous 911.........................9
         Caller's Statements Violated Appellant's Right
         to Confront and Cross-Examine the Witnesses
         Against him Guaranteed by the Sixth Amendment

         1. The Statement was Hearsay Because it was ..........10
            an Out of Court Statement Offered for the
            Truth of the Matter Stated

         2. The Statements were Testimonial Hearsay .............11
            Because They were Made not During but
            Approximately Ten Minutes After an
            Observation of Past Events

            a. The Crawford Court Held That ...........................11
               Spontaneous Statements are Testimonial
               Only Where the Statements were Truly
               Spontaneous

            b. The Anonymous Caller's Statements...................13
               were not Admissible Under Evidence
               Code Section 1240

         3. There was no Attempt to Show that the...................18
            Anonymous Caller was Unavailable to
            Testify at Trial and Appellant Never had
            the Opportunity to Cross-Examine him

2

B.   The Admission of the Anonymous Caller's ................. 19
Statement was Prejudicial Because it Cannot
be Proven Beyond a Reasonable Doubt that the
Statement was Unimportant to the Jury

II.   Even if the 911 Caller's Statements were not ................... 22
Testimonial Hearsay Under the Federal
Constitution, Their Admission was Erroneous
Under California Law

A.   The Statements were Inadmissible Hearsay ............. 22
Because They were Made Out of Court and
were Offered for Their Truth

B.   The Admission of the Statements was ................. 23
Prejudicial Because There is a Reasonable
Probability that had the Statements Been
Excluded the Result Would have been more
Favorable to Appellant

III.   Although the Analysis in *Dueñas* has not ....................... 24
been Universally Accepted, this Court Should
Follow it Pending the California Supreme Court's
Resolution of the Issue

IV.   Conclusion ................................................................... 26

Certificate of Word Count ................................................ 27

Declaration of Service ....................................................... 28

# EXHIBIT – D

TELEPHONE
(818) 880-6600

## Halpern & Halpern
26500 W Agoura Road, Suite 212
Calabasas, California 91302
staciehalpern@sbcglobal.net

FACSIMILE
(818) 880-6611

## AUTHORIZATION

This will authorize my/our attorney **HALPERN & HALPERN** or it's authorized agent and /or representative to inspect, copy, and obtain original and/or copies and/or photostats of all of the following: 1.) MEDICAL REPORTS; (a) X-RAY READINGS, (b) BILLS; 2.) HOSPITAL RECORDS; 3.) POLICE REPORTS; 4.) WAGE LOSS RECORDS; 5.) PHOTOGRAPHS OF THE PROPERTY DAMAGE; and 6.) ANY AND ALL PERTINENT INFORMATION REGARDING INJURIES AND DAMAGES SUSTAINED IN AN ACCIDENT on the _____ day of

_____, 20_____, at _____

involving_____

xerox, photostats, or other photocopies of this authorization may be deemed to have the full force and effect as the original.

I, _Claudia Guzman_____ consent to the above authorization.
   Print Name

Date: _May 15_____, 20 18

_Clubs_____
Signature



DMH
PROPERTY OF LOS ANGELES COUNTY
550 S. VERMONT AVENUE
LOS ANGELES, CALIFORNIA 90020

3106808



## MOLINA HEALTHCARE

# Inpatient Admissions and Emergency Department Visits

| Type | Facility Name | Primary diagnosis | Admit Date | Discharge Date |
|---|---|---|---|---|
| Emergency Department Visit | CALIFORNIA HOSPITAL MEDICAL CENTER | Suicidal ideations | 12/31/2016 | |
| Emergency Department Visit | CALIFORNIA HOSPITAL MEDICAL CENTER | Encounter for removal of sutures | 06/28/2016 | |
| Emergency Department Visit | CALIFORNIA HOSPITAL MEDICAL CENTER | ENC CHG REMOVAL SURG WOUND DRSG | 06/23/2016 | |
| Emergency Department Visit | CALIFORNIA HOSPITAL MEDICAL CENTER | Pain in right hand | 06/17/2016 | 06/18/2016 |
| Emergency Department Visit | CALIFORNIA HOSPITAL MEDICAL CENTER | LACERATION W O FB RT HAND INITIAL | 06/17/2016 | |
| Inpatient Admission | CALIFORNIA HOSPITAL MEDICAL CENTER | LACERATION W O FB RT HAND INITIAL | 06/17/2016 | |

This information is based on authorizations/claims data and is current as of Thursday, May 17, 2018 12:08:23 PM; If you know of any discrepancies with Inpatient Admissions & Emergency Department visits information or if you need any historical Inpatient Admissions and Emergency Department visits information, please your Case Manager or Member Services.

**Report Generated on:**     Thursday, May 17, 2018 12:08:23 PM



●●○○○ T-Mobile  LTE                    12:07 PM                    ☺ 7% ⊏▭▸ ⨁

🔒 member.molinahealthcare.com            ↻

## My Molina

**MOLINA** °
HEALTHCARE                                     ☰

‹ Back          Explanation of Benefits

Showing 1-2 of 2

Claim Number: 17167814904
Claim Date: 12/31/2016
(PDF) View

Claim Number: 17200608922
Claim Date: 12/31/2016
(PDF) View

This information is based on the claims and encounters data; if you know of any discrepancies, please contact your Molina Case Manager or Member Services.

Account Settings | FAQ | | | Help?

HIPAA Privacy Notice | Terms of Use & Website Privacy

📞 **Contact Molina**

‹          ›          ⬆          ▭          ▢

# EXHIBIT – E

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**ADMITTED IN EVIDENCE**

DATE: _____ DNA ☐

TYPE OF HEARING: _____

CASE NO _____

EXH# NO _____

BY: _____ DEPUTY

SHERRI R. CARTER, EXECUTIVE OFFICER/CLERK
CRIM 129 (Rev 07-13) (replaces CR 108)

1

# RECORDED 911 CALL.

CASE NO.:            YA096701
CASE NAME:          People vs. Felix Delgadillo
CHARGE:             PC 207
RECORDING DATE:     August 15, 2017
RECORDING TIME:     2307 hours
RECORDING NO.:      17-56929phone.wav

LEGEND:

A – Automated Voice
F – Female 911 Operator
M -- Unidentified Male Voice
[Unintelligible] -- Unintelligible

Transcript provided by the Los Angeles County District Attorney's Office

A August 15, 2017, 23:07:03.  [Dialing and Ringing].

F 911 Emergency, 49.

M Yeah, I just say I saw a guy just pick up a girl and toss her into the back of his trunk.

F Where at, sir?

M I'm on Imperial.  It's a Toyota Yar [phonetic].  It's a—

F What's the license?

M -license – it is 7SXX589.

F The letters again.  S as in Sam, X as in X-ray, X as in X-ray?

M Yes.  7-7-S in Sam-X-X – 7-S-X-X-5-8-9.

F Okay.  What color?

M It's a white Yar.  She was going down Imperial Highway. And Inglewood.

F Okay.  From Imperial - what street did they last cross?

M I think it was – wow, um Prairie.

F Prairie?  What direction?  East or west on Imperial?

M He was going west on Imperial, but then he made a left.

F Mm hmm.

M I just drove past.  He made a left when he passed Prairie and he went down some side street going south on Prairie.

F Okay.  What did he look like?

M Hispanic.

F All right.  Hold on one second.   He put her in the trunk?

M Yeah.  When I first – I first drove by, he was beating her up.

F Okay.

M That's when he picked her up and threw in the trunk.

F       Okay.  And do you remember what he – how old he looked to be about?

M       I could say about 30 to 40.

F       Okay.  And was she Hispanic as well?

M       Yes, she was.  Like she had – he had like a white shirt on.

F       Uh huh.

M       And like black colored shorts.  And she – I believe she – she had long brown hair, Hispanic, and I think she had all black on.  Like a black hoodie.

F       Mm hmm.

M       And um black – black pants.  With sandals.

F       And did he—

M       I couldn't believe that she was barefooted.

F       Okay.  How long ago did this happen?

M       It happened about like – like ten minutes ago.  Well, actually less than that.  I just like – I called you.  That's when—

F       Okay.  Are you still in the area?

M       No, I just – I drove.  I just kept driving, after I got the license plate number.

F       Okay.  I'm going to send an officer out there, in the area.  So, you have already gone?

M       Yeah.

F       Okay.  And did you want to leave your name, sir?

M       No, I just want to be anonymous.

F       Can we call you by phone?

M       Um, I – um—

F       You can remain anonymous.

4

M Yeah, I'll just remain anonymous.

F Okay.  All right.  Thank you, sir.

M All right.  I just wanted to call.  Okay.

F Okay.  Bye bye.

M Bye bye.

A August 15, 2017 23:09:59.



glewood Police Departmen

**FOLLOW-UP HARDCOPY**

(273.5-0 273.5(A) BEAT SPOUSE/CO-HABITA)

GO# IN  2017-56929
PENDING MISD DA
REVIEW

## Related Text Page(s)

| | |
|---|---|
| Narrative Text # | 1 |
| Document | FOLLOWUP |
| Author | 839 - RODRIGUEZ LUIS |
| Related Date/Time | AUG-16-2017  (WED.) 0959 |

**Follow-up investigation:**
On 8/16/17, I was assigned this in-custody case for follow-up investigation. I reviewed the arrest report, supplemental report and the attached photographs related to the case. I then called the listed victim (V-Claudia Guzman) and left a voice message for her to call me back for a follow-up statement. I then went to our jail to see if the arrestee, S-Felix Degadillo wanted to give me a statement regarding his arrest. I introduced myself as the handling Detective and asked him if he wanted to talk and he said yes. I then advised him of his Miranda rights per our Department Miranda Admonishment form. S-Delgadillo waived his right, signed the form and agreed to speak with me.   The following is a summary of his statement;

**Suspect's (Delgadillo) Miranda Statement:  Interview was audio recorded**
I asked Delgadillo to confirm his relationship with the victim (Claudia Guzman) and he did. He confirmed they were in a dating relationship and they have a daughter together (8 year old, Natalia Delgadillo). I then asked him what happened yesterday and he said he was not with Claudia Guzman. I asked him how he got there and he said he did not remember. He then said that somehow he was informed that she had gotten a flat tire, so he went there to fix it. I asked him how he arrived there and again he said he did not remember. Delgadillo then said he was taking too long to fix the tire, so Claudia Guzman began to walk away from him, because she was upset that he was taking too long.

Delgadillo then said soon after they saw several police officers pulling up, so he began to walk away, until he was detained and arrested for no reason. He said he did not do anything wrong. I asked him if he recalled assaulting Claudia Guzman and he said no. I asked him if he used any type of drugs or alcohol yesterday and he said no. I asked him if he had any medical problems or condition that would affect his brain or memory and he said no. Delgadillo said he only had a few hours of sleep.  Delgadillo said the vehicle did not belong to him and it belonged to Claudia Guzman. I told him theta the vehicle plate returned back to a person named Felipe Delgado, ~~a~~ ~~the~~ but he said that was the old license plate. The interview was concluded.

At approximately 1030 hours, I again called the listed victim, but there was no answer. I left another voice message for her to call me back.

I conducted a computer inquiry to check for any other prior reports of domestic violence between the same individuals, but I found none in our reporting database.

**Action taken:**
Through departmental resources, I checked the criminal record for the suspect and found he had two prior felony convictions and three prior misdemeanor convictions, see attached C.C.H.R.S. report for further.

Guzman testified that two weeks after the incident she told Police Detective Rodriguez that Delgadillo had not kidnapped her, she had been trying to hurt herself, and Delgadillo was going to take her home.  She told Det. Rodriguez that she had gotten into the trunk of the Prius, but Delgadillo had not hit her.  (3RT 929-930.)

The trial court allowed the prosecution to play a portion of Guzman's recorded statement to the police as impeachment. (Ex. 16.)  In the recording Guzman can be heard telling police officers that Delgadillo had pulled her by her hair, pushed her to the ground and forced her to get into the trunk of her car.  (People's Ex. 16[4].)

Guzman testified that she remembered the police interview, but she had not been honest with the police that night.  She reiterated that Delgadillo never threw her into the trunk of the car, pushed her to the ground or caused her injuries.  (3RT 941-947.)

---

[4] On May 7, 2019 pursuant to a Rule 8.340 omissions letter appellant requested the transcript of victim Guzman's police interview, Exhibit 17.  On June 11, 2019 the Superior Court provided a transcript of the 911 call, Exhibit 2 as Exhibit 17. The same is true of the Clerk's Transcript, see pp. 77-80, marked as Exhibit 2 and pp. 101-105, marked as Exhibit 17, both transcripts are the same. The transcript from Guzman's police interview has not been provided and was again requested October 15, 2019.

2. **Claudia G. recants her police interview in which she admitted appellant attacked her and threw her into the trunk of her car**

On August 15, 2017, appellant texted Claudia G. to see if she "wanted to relax . . . ."  (3RT 906.)  Claudia G. "agreed to meet up," and appellant picked her up at her home.  (3RT 906.)  They drove to a motel in her car.  (3RT 906.)  There, they drank beer, and Claudia G. "started feeling a little angry" because sometimes she did not "like him."  (3RT 908.)  She began "telling things to him" such as "'I hate you,' . . . 'you're happy, you're living your life.'"  (3RT 908-909.)  Appellant told her she was "drama" and left in Claudia G.'s car.  (3RT 909.)  Claudia G. remained at the motel and continued to drink.  She became more emotional when she texted a friend, and he did not respond.  She then texted appellant to come back with her car.  (3RT 909.)

Appellant returned to the motel and saw that Claudia G. "had like pulled stuff off the wall . . . ."  (3RT 910.)  He said he wanted to take her home, but she wanted to drive herself.  She let him drive anyway and eventually "opened the door so [she] could like jump off."  (3RT 911.)  Appellant slowed the car, and Claudia G. closed the door.  (3RT 912.)  She fell asleep and woke up to find appellant standing in front of her parked car.  He was removing stuff from the trunk and told her that he thought the car had a flat tire.  Claudia G. tried to get a blanket from the

Document received by the CA 2nd District Court of Appeal.

influence of alcohol at the time.[2]  (3RT 945, 948.)  Claudia G. told the detective that appellant did not kidnap her, and she was trying to hurt herself.  She added that she was "acting crazy." (3RT 930.)  The detective "kept on pushing that issue about but he threw you in the trunk . . . ," so she agreed because she wanted to get back her car, which had been towed.  (3RT 928-930.)  Claudia G. also agreed that she opened the trunk from the inside and freed herself before appellant followed her and pushed her to the ground.  (3RT 949-951.)

Despite what Claudia G. told the police, she denied having been hit by appellant or taken by him anywhere she did not want to go.  (3RT 930-931.)  She admitted she had two scratches on her face, but did not know how she got them.  (3RT 931.)

## ARGUMENT

I.  **The trial court did not abuse its discretion when it concluded the anonymous 911 call was a spontaneous utterance, and the admission of the call did not violate appellant's right to confront the witness because it consisted entirely of nontestimonial statements**

Appellant asserts that the trial court abused its discretion by admitting an anonymous 911 call.  (AOB 16-24.)  Appellant's evidentiary challenge to the admission of an anonymous 911 call

---

[2] The prosecutor played the recording for the jury.  (3RT 945.)

Document received by the CA 2nd District Court of Appeal.

PROOF OF SERVICE BY MAIL

(C.C.P. §1013(a) & §2015.5; U.S.C §1746)

I, _____ CE _____ , DEPOSE AND STATE UNDER THE PENALTY OF
PERJURY THAT I AM OVER 18 YEARS OF AGE, THAT I AM <u>NOT</u> A PARTY TO THE
ATTACHED _AMENDE CIVIL RIGHTS COMPLAINT. EXHIBIT A THROUGH E_
_____ BY A PERSON IN STATE
CUSTODY IN PROPIA PERSONA AND THAT I DID ON THE BELOW CASE DEPOSIT
IN THE UNITED STATES MAIL AT _____ CALIFORNIA CITY _____ , CALIFORNIA
THE ORIGINAL AND __Ø__ COPIES OF THE ABOVE DESCRIBED DOCUMENT WITH
POSTAGE FULLY PRE PAID THEREON FOR MAIL TO:

> UNITED STATES DISTRICT COURT
> CENTRAL DISTRICT OF CALIFORNIA
> EDWARD R. ROYBAL FEDERAL COURTHOUSE
> 255 E. TEMPLE STREET
> LOS ANGELES, CALIFORNIA. 90012

DATE EXECUTED: _MARCH 11, 2021 (THURSDAY)_ BY: _____
                                                    DECLARANT/PRISONER

PROOF OF SERVICE BY MAIL

RETURN NOTICE OF RECEIVING TO:

_FELIX DELGADILLO. CDCR B1·3731_

_CORRECTIONAL TRAINING FACILITY ( CTF)_

_HIGHWAY 101 NORTH_

_SOLEDAD. CALIFORNIA. 93960_

_____

PURSUANT TO
PENAL CODE §1258

CHARLES   EASLEY, CDCR # AT 3091
22899   VIRGINIA BOULEVARD
P. O. BOX 2610
CALIFORNIA CITY, CALIFORNIA, 93505

Legal Mail

UNIT
CEN
EDW
255
LOS



CONFIDENTIAL LEGAL MAIL 8 MARCH 11, 2021







ED STATES DISTRICT COURT
RAL DISTRICT OF CALIFORNIA
ORD R. ROYBAL FEDERAL COURT
E. TEMPLE STREET.
ANGELES, CALIFORNIA. 90012